UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DILLON,<br><br>      Plaintiff,<br><br>   v.<br><br>KADMON HOLDINGS, INC., TASOS G. KONIDARIS, HARLAN W. WASKAL, EUGENE BAUER, DAVID E. COHEN, ARTHUR KIRSCH, NANCY MILLER-RICH, and CYNTHIA SCHWALM,<br><br>      Defendants. | Case No. _____<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, John Dillon ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Kadmon Holdings, Inc. ("Kadmon" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Kadmon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between Kadmon, Sanofi S.A. ("Sanofi"), and Latour Merger Sub, Inc. ("Merger Sub"), a wholly-owned indirect subsidiary of Sanofi ("Proposed Transaction").

1

2. On September 7, 2021, Kadmon executed an Agreement and Plan of Merger with Sanofi and Merger Sub ("Merger Agreement"), whereby Merger Sub will merge with and into Kadmon, with Kadmon surviving and becoming a wholly-owned indirect subsidiary of Sanofi.

3. Upon consummation of the Proposed Transaction, each share of the Company's common stock will be converted into the right to receive $9.50 in cash ("Merger Consideration").

4. On September 21, 2021, in order to convince Kadmon's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Kadmon; and (ii) the financial analyses performed by the Company's two financial advisors, Cantor Fitzgerald & Co. ("Cantor Fitzgerald") and Moelis & Company LLC ("Moelis").

6. The Proposed Transaction is expected to close in the fourth quarter of 2021, so the special meeting of the Company's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote"). Therefore, it is crucial that the material information omitted from the Proxy is disclosed prior to the Shareholder Vote, so Kadmon's shareholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Kadmon's shareholders sufficiently before the Shareholder Vote or, in the event the Proposed Transaction is

consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Kadmon is headquartered in this district and Kadmon's common stock trades on the NASDAQ Global Market ("NASDAQ"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). The Company's financial advisor for the Proposed Transaction, Moelis, is located in this District at 399 Park Avenue, New York, NY 10022, further establishing venue in this district appropriate.

3

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Kadmon common stock.

12. Defendant Kadmon is a public company incorporated under the laws of Delaware with principal executive offices located at 450 E 29th Street, New York, NY 10016. The Company's common stock trades on the NASDAQ under the ticker symbol "KDMN."

13. Defendant Tasos G. Konidaris is, and has been at all relevant times, a director of the Company, and Chairman of the Board.

14. Defendant Harlan W. Waksal is, and has been at all relevant times, a director of the Company, President and Chief Executive Officer.

15. Defendant Eugene Bauer is, and has been at all relevant times, a director of the Company.

16. Defendant David E. Cohen is, and has been at all relevant times, a director of the Company.

17. Defendant Arthur Kirsch is, and has been at all relevant times, a director of the Company.

18. Defendant Nancy Miller-Rich is, and has been at all relevant times, a director of the Company.

19. Defendant Cynthia Schwalm is, and has been at all relevant times, a director of the Company.

20. Defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background and the Proposed Transaction**

21.    Kadmon is a biopharmaceutical company that discovers, develops, and delivers transformative therapies for unmet medical needs. The Company's clinical pipeline includes treatments for immune and fibrotic diseases as well as immuno-oncology therapies. For example, RezurockTM (belumosudil), an oral, once-daily tablet, is approved in the United States for the treatment of adult and pediatric patients 12 years and older with chronic graft-versus-host disease (cGVHD) after failure of at least two prior lines of systemic therapy.

22.    Sanofi is a société anonyme, a form of limited liability company, organized under the laws of France. Sanofi is a leading global healthcare company, focused on patient needs and engaged in the research, development, manufacture, and marketing of therapeutic solutions.

23.    On September 8, 2021, Kadmon and Sanfoi issued a joint press release announcing the Proposed Transaction, which states in relevant part:

> **Sanofi To Acquire Kadmon To Further Strengthen Growth of Transplant Business**
>
> **PARIS, FRANCE and NEW YORK, NY/ ACCESSWIRE/ September 8, 2021/** Sanofi has entered into a definitive merger agreement with KadmonHoldings, Inc. (NASDAQ:KDMN) a biopharmaceutical company that discovers, develops, and markets transformative therapies for disease areas of significant unmet medical needs. The acquisition supports Sanofi's strategy to continue to grow its General Medicines core assets and will immediately add Rezurock™ (belumosudil) to its transplant portfolio. Rezurock is a recently FDA approved, first-in-class treatment for chronic graft-versus-host disease (cGVHD) for adult and pediatric patients 12 years and older who have failed at least two prior lines of systemic therapy.
>
> Shareholders of Kadmon common stock will receive $9.50 per share in cash, which represents a total equity value of approximately $1.9 billion (on a fully diluted basis). The Sanofi and Kadmon Boards of Directors unanimously approved the transaction.

"We are transforming and simplifying our General Medicines business and have shifted our focus on differentiated core assets in key markets," said Olivier Charmeil, Executive Vice President General Medicines. "We are thrilled to add Kadmon's Rezurock to our well-established transplant portfolio. Our existing scale, expertise, and relationships in transplant create an ideal platform to achieve the full potential of Rezurock, which will address the significant unmet medical needs of patients with chronic graft-versus-host disease around the world."

"We are excited that Sanofi has acknowledged the value of Rezurock and the deep potential of our pipeline," said Harlan Waksal, M.D., President and Chief Executive Officer, Kadmon. "By leveraging Sanofi's global resources and long-standing expertise in developing and commercializing innovative medicines, Rezurock is now well positioned for global accessibility, faster. I want to thank the entire Kadmon team, including management and the Board of Directors, and the Sanofi organization, for their ongoing commitment to patients and their caregivers."

Sanofi's transplant business mainly consists of Thymoglobulin® (anti-thymocyte globulin), a polyclonal, anti-human thymocyte antibody preparation that acts as a broad immunosuppressive and immunomodulating agent and Mozobil® (plerixafor), a hematopoietic stem cell mobilizer. Both products are among General Medicines core assets and are currently registered and marketed in more than 65 countries.

In July 2021, the FDA approved Rezurock for the treatment of adult and pediatric patients 12 years and older with cGVHD after the failure of at least two prior lines of systemic therapy. Rezurock was launched in August in the United States. It is the first and only approved small molecule therapy that inhibits the Rho-associated coiled-coil kinase 2 (ROCK2), a signaling pathway that modulates inflammatory response and fibrotic processes. Sanofi will work closely with regulatory authorities across different geographies to ensure that patients suffering from cGVHD can benefit from belumosudil treatment as early as possible. Kadmon is also developing Rezurock for the treatment of diffuse cutaneous systemic sclerosis, with an open-label Phase 2 clinical trial currently ongoing.

Kadmon's pipeline includes drug candidates for immune and fibrotic diseases as well as immuno-oncology therapies.

The transaction is expected to be modestly dilutive to Sanofi's EPS in 2022.

**Transaction Terms**

Under the terms of the merger agreement, holders of Kadmon's common stock will receive $9.50 per share in an all-cash transaction, reflecting a total equity value of Kadmon of approximately $1.9 billion. The offer price represents a

premium of 79% over the closing price on September 7, 2021 and a premium of approximately 113% over the 60 trading days volume weighted average price.

The consummation of the transaction is subject to customary closing conditions, including the approval of holders of a majority of the outstanding shares of Kadmon voting stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the merger, a wholly owned subsidiary of Sanofi will merge with Kadmon and the outstanding Kadmon shares will receive $9.50 per share in cash. Sanofi plans to fund the transaction with available cash resources. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the fourth quarter of 2021.

Weil, Gotshal & Manges LLP is acting as legal counsel to Sanofi. Cantor Fitzgerald & Co. and Moelis & Company LLC are acting as exclusive financial advisors to Kadmon in the transaction, while DLA Piper LLP (US) is acting as legal counsel.

24.     It imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**II.     The Proxy Omits Material Information**

25.     On September 21, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders, to ensure that it did not contain any material misrepresentations or omissions.  Thus, the Proxy should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

A.     <u>The Misleadingly Incomplete Financial Projections</u>

26.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of

Cantor Fitzgerald's and Moelis' fairness opinions, Cantor Fitzgerald and Moelis reviewed certain operating and financial information relating to the Company's business and prospects, including projections for the Company for the 14 years ended December 31, 2034, all as prepared and provided to Cantor Fitzgerald and Moelis by the Company's management. *See* Proxy at 34 & 39. Notably, the projections provide values for two non-GAAP financial metrics: EBIT, and Unlevered Free Cash Flow.

27. The Proxy, however, fails to provide a reconciliation of all non-GAAP to GAAP metrics. The omission of this information renders the projections disclosed by Defendants a misleading half-truth.

28. Further, despite references to Net Income/Loss which were necessarily utilized in calculating EBIT, the Proxy fails to disclose the Net Income/Loss projections for the Company. By disclosing certain projections and withholding the material Net Income/Loss projections, Defendants render the projections on page 47 & 48 of the Proxy materially incomplete, because it provides a misleading valuation picture of Kadmon. Simply put, Net Income/Loss projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

29. Moreover, when a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

30. Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

31. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Cantor Fitzgerald and Moelis, but have omitted the crucial Net Income/Loss projections and reconciliations. Thus, Defendants' omission renders the projections disclosed on page 47 & 48 of the Proxy misleading.

    B.    <u>The Misleadingly Incomplete Summary of Cantor Fitzgerald's Valuation Analyses</u>

32. The Proxy describes Cantor Fitzgerald's fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information by including the fairness opinions and valuation analyses among the factors

9

considered in recommending the Proposed Transaction. Proxy at 31. However, the summary of Cantor Fitzgerald's fairness opinion and analyses provided in the Proxy fails to include, *inter alia*, key inputs and assumptions underlying the analyses. Without this information, as described below, Kadmon shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Proposed Transaction. *See id.* at 35. ("**Considering the data below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of Cantor Fitzgerald's financial analyses.**") (emphasis in original). This omitted information, if disclosed, would significantly alter the total mix of information available to Kadmon's shareholders.

33. With respect to Cantor Fitzgerald's *Selected Companies Analysis* the Proxy fails to disclose: (i) the individual metrics observed and basis for each of the ten companies selected as comparable to Kadmon; (ii) the enterprise values for each of the selected companies; (iii) the inputs and assumptions underlying Cantor Fitzgerald's selection of 2026E revenue multiples range of 1.00x to 3.00x; and (iv) the number of fully diluted shares of Kadmon's common stock used in the analysis. Proxy at 36.

34. With respect to Cantor Fitzgerald's *Selected Precedent Transactions Analysis* the Proxy fails to disclose: (i) the individual metrics observed and basis for each of the selected transactions; (ii) the inputs and assumptions underlying Cantor Fitzgerald's selection of the enterprise values range of $1,250 million to $2,000 million; (iii) the inputs and assumptions underlying Cantor Fitzgerald's selection of 2026E revenue multiples range of 2.25x to 4.25x; and (iv) the number of fully diluted shares of Kadmon's common stock used in the analysis. Proxy at

36-37.

35. With respect to Cantor Fitzgerald's *Discounted Cash Flow Analysis* the Proxy fails to disclose: (i) the inputs and assumptions underlying the selected discount rate range of 9.5% to 11.5%, including the size premium that was applied; (ii) the inputs and assumptions underlying the free cash flow decline in perpetuity at a rate ranging from 60% to 10% year-over-year; (iii) the terminal values calculated for the analysis; and (iv) the number of fully diluted shares of Kadmon's common stock used in the analysis. Proxy at 37.

   C. <u>The Misleadingly Incomplete Summary of Moelis' Valuation Analyses</u>

36. The Proxy describes Moelis' fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information by including the fairness opinions and valuation analyses among the factors considered in recommending the Proposed Transaction. Proxy at 31. However, the summary of Moelis' fairness opinion and analyses provided in the Proxy fails to include, *inter alia*, key inputs and assumptions underlying the analyses. Without this information, as described below, Kadmon shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Kadmon's shareholders.

37. With respect to Moelis' *Selected Publicly Traded Companies Analysis* the Proxy fails to disclose: (i) the individual metrics observed and basis for each of the sixteen companies selected as comparable to Kadmon; (ii) the inputs and assumptions underlying Moelis' selection of 2026E revenue multiples range of 1.50x to 2.25x for the KD025 Group of selected companies; (iii) the inputs and assumptions underlying the selection of a $1 billion to $2 billion enterprise

value reference range for the Company's KD025 assets; (iv) the individual multiples for the IO Platform Group of selected companies; and (v) the inputs and assumptions underlying the selection of a $175 million to $350 million enterprise value for the Company's IO Platform assets. Proxy at 42.

38.     With respect to Moelis' *Selected Precedent Transactions Analysis* the Proxy fails to disclose: (i) the individual metrics observed and basis for each of the selected transactions; (ii) the inputs and assumptions underlying Moelis' selection of TEV / CY-5 Sales multiples range of 1.50x to 3.00x; and (iii) the inputs and assumptions underlying the selection of the Company's Total Enterprise Value range of $1.5 billion to $2.5 billion. Proxy at 44.

39.     With respect to Moelis' *Discounted Cash Flow Analysis* the Proxy fails to disclose: (i) the inputs and assumptions for selecting a discount rate range of 8.25% to 10.75%, including the size premium that was applied; (ii) the inputs and assumptions underlying the free cash flow decline in perpetuity at a rate ranging from 75% to 25% year-over-year; and (iii) the terminal values calculated for the analysis. Proxy at 41.

40.     These key inputs are material to the Company's shareholders, and their omission renders the summary of Cantor Fitzgerald's and Moelis' *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds*

12

*of millions of dollars*….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices***. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of Cantor Fitzgerald's or Moelis' *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Kadmon, or were the result of an unreasonable judgment by Cantor Fitzgerald and Moelis, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

41.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

46. Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Kadmon; and (ii) the financial analyses performed by Cantor Fitzgerald and Moelis.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders, although they could have done so without extraordinary effort.

48. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that both Cantor Fitzgerald and Moelis reviewed and discussed their respective financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Cantor Fitzgerald and Moelis, as well as their fairness opinions and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the Company's projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Cantor Fitzgerald's and Moelis' analyses in connection with their receipt of the fairness opinions, question Cantor Fitzgerald and Moelis as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, and preparation and review of the Company's financial projections.

50. Kadmon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Kadmon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kadmon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

56. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and

proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 4, 2021                     **MONTEVERDE & ASSOCIATES PC**

                                                            */s/* Juan E. Monteverde
                                                            Juan E. Monteverde (JM-8169)
                                                            The Empire State Building
                                                            350 Fifth Avenue, Suite 4405
                                                            New York, NY 10118
                                                            Tel: (212) 971-1341
                                                            Fax: (212) 202-7880
                                                            Email: jmonteverde@monteverdelaw.com

                                                            *Attorneys for Plaintiff*